**MANGANARO BROTHERS, INC.,**
Plaintiff, Appellee,

v.

**GEVYN CONSTRUCTION CORP.,**
Defendant, Appellant.

No. 79–1282.

United States Court of Appeals,
First Circuit.

Argued Oct. 1, 1979.

Decided Dec. 5, 1979.

Cornelius J. Moynihan, Jr., Boston, Mass., with whom Peabody, Brown, Rowley & Storey, Boston, Mass., Leslie A. Hynes and Hynes, Diamond & Reidy, New York City, were on brief, for defendant, appellant.

Peter J. Gagne, Boston, Mass., with whom Sally A. Corwin, Joseph M. Corwin and Corwin & Corwin, Boston, Mass., were on brief for plaintiff, appellee.

Before COFFIN, Chief Judge, ALDRICH, Circuit Judge, BONSAL,* District Judge.

ALDRICH, Senior Circuit Judge.

In 1967, Middlesex County, Commonwealth of Massachusetts, contracted with defendant Gevyn Construction Corporation, as general contractor, to build a courthouse. Defendant entered into a number of subcontracts, including one with plaintiff Manganaro Brothers, Inc. When plaintiff's work was partially completed, County terminated the prime contract, and on learning this, plaintiff ceased work. Plaintiff sued Gevyn on two grounds, for payment due on work completed, and for anticipated profits on the balance.

The first aspect has been disposed of. No purpose would be served by detailing the history of the second except to say that the amount of plaintiff's anticipated future profit has been determined at a bench trial and defendant held liable therefor. Defendant's appeal revolves around ¶ 35 of plaintiff's contract.

> 35. In the event that the Owner terminates or cancels the Principal Contract for any cause whatsoever at any time

* Of the Southern District of New York, sitting by designation.

after the date hereof, this Subcontract shall likewise be deemed cancelled and terminated. In such event [the Contractor's liability shall be limited to payment for work done].

Plaintiff says that this provision is not applicable if the cause of County's termination was Gevyn's default on the principal contract. To construe "any cause whatsoever" as excluding defendant's fault would, however, read a significant limitation into language unrestricted on its face, as well as introduce a possibly difficult issue [1] destroying the simplification the parties seemingly intended. In any event, although requested to do so, the court failed to find Gevyn responsible for County's termination, a failure understandable in the light of the paucity of evidence. The court's finding for plaintiff was based on its finding that Gevyn had committed a substantial breach of the subcontract, that the breach had not been waived, and that the breach "rendered irrelevant the provisions of Section 35." We take this last to mean what plaintiff asserts it to mean, that Gevyn lost the right to rely on section 35.

Defendant's breach was that it did not keep up the proportionate payments due to plaintiff out of monies received from County. This breach was not waived for the excellent reason that plaintiff was not aware of it until some months after the termination. Our first question, therefore, is the correctness of the court's ruling that the breach, subsequently discovered, prevented defendant's reliance on a clause limiting damage. The court made no express finding, but we may assume from the evidence that the breach was intentional. At the same time, it was totally unconnected, causally or otherwise, with County's termination of the principal contract and the termination of plaintiff's subcontract.

We do not agree with the district court. To begin with, defendant's breach, even though a substantial one, of course did not of itself terminate the contract, but merely gave plaintiff a right to terminate it. Before plaintiff had exercised that right, the termination of the principal contract caused the contract to terminate by reason of ¶ 35, which was then in full force. It is difficult to say that ¶ 35 was at once the operative provision and irrelevant.

But even had this not been the case, and plaintiff had been the one to terminate by asserting defendant's breach, the court could not read ¶ 35 out of the agreement. While plaintiff might have ignored the contract and sued simply in quantum meruit, it did not, but instead sought future profits on agreed-to but unperformed work. The black letter rule is stated in *United States v. Zara Contracting Co.*, 2 Cir., 1944, 146 F.2d 606, at 610, "[T]he definite commitment which the plaintiffs have made in Article 5 is one they must stand by so long as they must rely upon their contract . . . ." Since plaintiff is relying on the contract to recover, the court's decision to read ¶ 35 out of the contract could not be made as a ruling of law, but was a result justifiable, if at all, only by interpretation of the contract's own terms.

This may be tested by supposing for the moment that ¶ 35 had contained a further sentence, "This provision will apply even if the Contractor was in default on this subcontract." Obviously, in that case, plaintiff could not claim that defendant's breach prevented its reliance on the provision. So, here, such a claim can be made only by interpreting ¶ 35 to contain the opposite of what we have just supposed, viz., an exception to the effect that ¶ 35 will *not* apply in case of Gevyn's default. Plaintiff is back where it started, seeking to read an exception into language absolute on its face.

■■■ It would be peculiarly inappropriate to do this when, under ordinary damage principles, a party cannot, by claiming a breach, recover more than he would have obtained had no breach occurred. In view

---

1. Interestingly enough, plaintiff observes in its brief, in another connection,

"A subcontractor is not in a position to prove responsibility for breaches between the general contractor and the owner. The documents and information necessary to that determination are beyond the subcontractor's reach."

of the fact that because of the termination of the principal contract, for which defendant was not chargeable, plaintiff never would have been able to realize future profits, there is no reason why it should acquire a windfall from defendant by pointing to an entirely collateral breach on defendant's part. Supervening impossibility of performance not occasioned by the defendant puts an end to recovery, regardless of defendant's prior breach. Restatement of the Law of Contracts (1932) § 457, esp. Comment d; *Model Vending, Inc. v. Stanisci,* 1962, 74 N.J.Super. 12, 180 A.2d 393.

*Reversed.*